IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| DUANE F. DAUGHERTY,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NOVO NORDISK A/S, NOVO NORDISK, INC., ELI LILLY and COMPANY, and LILLY USA, LLC,<br>　　　　　　　　　Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:26-cv-00136 |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, file(s) this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such *Master Complaint*, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): _____Duane F. Daugherty_____.

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____N/A_____, as _____ of the estate of _____, deceased.

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____N/A_____.

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____N/A_____.

**Defendant(s)**

5. Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

   __X__ Novo Nordisk Inc.

   __X__ Novo Nordisk A/S

   __X__ Eli Lilly and Company

   __X__ Lilly USA, LLC

   _____ other(s) (identify): _____

## JURISDICTION AND VENUE

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

   Plaintiff is a citizen of the United States, a citizen of the State of Indiana, and a resident of the city of Terre Haute, Indiana.

7. State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

   Plaintiff's physician(s) prescribed Ozempic and Trulicity that were used by Plaintiff in Indiana.

8. State of Plaintiff's residence at time of his use of the GLP-1RA Product(s) at issue:

   Plaintiff was a citizen of the State of Indiana at the time of his GLP-1 RA use.

9. City and state of Plaintiff's residence at time of diagnosis of injury:

   Plaintiff resided in Terre Haute, Indiana at the time of his diagnosis of his injur(ies).

10. Jurisdiction is based on:

    __X__ diversity of citizenship pursuant to 28 U.S.C. § 1332

    _____ other (plead in sufficient detail as required by applicable rules):

    _____

    _____

11. The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

    United States District Court for the Southern District of Indiana

12. Venue is proper in the District Court identified in Paragraph 11 because:

    __X__ a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

3

    \_\_\_\_\_ other (plead in sufficient detail as required by applicable rules):

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

<u>N/A</u>

## **PRODUCT USE**

14.    Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

    <u> X </u>    Ozempic (semaglutide)

    \_\_\_\_\_    Wegovy (semaglutide)

    \_\_\_\_\_    Rybelsus (oral semaglutide)

    \_\_\_\_\_    Victoza (liraglutide)

    \_\_\_\_\_    Saxenda (liraglutide)

    <u> X </u>    Trulicity (dulaglutide)

    \_\_\_\_\_    Mounjaro (tirzepatide)

    \_\_\_\_\_    Zepbound (tirzepatide)

    \_\_\_\_\_    Other(s) (specify): _____

15.    To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

<u>Plaintiff used Ozempic from in or about September 2020 through June 2021and from in or about April 2023 through in or about August 2023. Plaintiff used Trulicity from in or about October 2023 through in or about December 2023.</u>

4

## .   **INJURIES AND DAMAGES**

16. To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

    \_\_\_\_\_ Gastroparesis

    \_\_\_\_\_ Other gastro-intestinal injuries (specify): _____

    \_\_\_\_\_ Ileus

    \_\_\_\_\_ Ischemic Bowel/Ischemic Colitis

    \_\_\_\_\_ Intestinal Obstruction

    \_\_\_\_\_ Necrotizing Pancreatitis

    __X__ Gallbladder Injury (specify): <u>Cholecystectomy</u>

    \_\_\_\_\_ Micronutrient Deficiency

    \_\_\_\_\_ Wernicke's encephalopathy

    \_\_\_\_\_ Aspiration

    \_\_\_\_\_ Death

    \_\_\_\_\_ Additional/Other(s) (specify): _____

17. Plaintiff's injuries occurred in approximately (month and year)?

    <u>After using both Ozempic and Trulicity, Plaintiff presented to his local hospital emergency department on December 3, 2023, with abdominal pain, nausea, and vomiting and was admitted to the hospital. Subsequently physicians determined a cholecystectomy was necessary and the same was performed on December 5, 2023.</u>

18. In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

   __X__ Injury to self

   _____ Injury to person represented

   __X__ Economic loss

   _____ Wrongful death

   _____ Survivorship

   _____ Loss of services

   _____ Loss of consortium

   _____ other(s) (specify): _____

## CAUSES OF ACTION

19. In addition to adopting and incorporating by reference the *Master Complaint* as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the *Master Complaint* (check all that apply):

   _____ Count I:    Failure to Warn – Negligence

   _____ Count II:   Failure to Warn – Strict Liability

   _____ Count III:  Breach of Express Warranty/Failure to Conform to Representations

   _____ Count IV:  Breach of Implied Warranty

   __X__ Count V:   Fraudulent Concealment/Fraud by Omission
                          *See* Exhibit "A" regarding Count V

   __X__ Count VI:  Fraudulent/Intentional Misrepresentation
                          *See* Exhibit "A" regarding Count VI

   _____ Count VII:  Negligent Misrepresentation/Marketing

   _____ Count VIII: Strict Product Liability Misrepresentation/Marketing

   _____ Count IX:  Innocent Misrepresentation/Marketing

   _____ Count X:   Unfair Trade Practices/Consumer Protection

   _____ Count XI:  Negligence

    __X__   Count XII:  Negligent Undertaking

    __X__   Count XIII: State Product Liability Act ("TPLA") (see below)

    _____   Count XIV: Wrongful Death

    _____   Count XV:  Loss of Consortium

    _____   Count XVI: Survival Action

    _____   Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

    _____

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:*

    a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

    N/A                                                         .

    b. Identify the factual allegations supporting those claims (by subsection, if applicable):

    N/A                                                          .

*\* Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

    a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

<blockquote>The Indiana Products Liability Act ("Indiana PLA") is codified at IN Code § 34-20-1-1, et seq. More specifically, Plaintiff brings claims under IN Code §§ . 34-20-2-1; 34-20-2-2; 34-20-2-3; 34-20-4-1; 34-20-4-2.</blockquote>

b. Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim: <u>Subsumed by Indiana PLA: Failure to Warn (Count I); Failure to Warn – Strict Liability (Count II); Breach of Express Warranty / Failure to Conform to Representations (Count III); Breach of Implied Warranty (Count IV); Negligent Misrepresentation / Marketing (Count VII); Innocent Misrepresentation / Marketing (Count IX); Negligence (Count XI). Indiana PLA and Tort: Fraudulent Concealment / Fraud by Omission (Count V); Fraudulent / Intentional Misrepresentation (Count VI); and Negligent Undertaking (Count XII).</u>

c. Identify the factual allegations supporting those claims:

<u>Defendants as both sellers and manufacturers of the GLP-1 RA Product(s) produced defective Product(s) that were inherently unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to be safer, and that would cause injury as produced and sold. Defendants also failed to provide adequate warnings or information with regard to their products and misled consumers, including Plaintiff, as well as consumers' physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff was overweight and was prescribed Ozempic and</u>

Trulicity for treatment of diabetes and weight loss. He was exposed to advertisements regarding the weight loss advantages of Trulicity and Ozempic which omitted and/or downplayed the risks of using the medications. Instead, Defendants' television commercials made statement such as "no increased risk" and "it gets my body to release insulin-like it's supposed to." Plaintiff discontinued his use of Ozempic and then Trulicity after suffering from gastrointestinal difficulties including nausea and vomiting, and a cholecystectomy.

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I:     Failure to Warn – Negligence (paragraphs 606-640)

Count II:    Failure to Warn – Strict Liability (paragraphs 641-674)

Count III:   Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV:   Breach of Implied Warranty (paragraphs 699-720)

Count V:    Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:   Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII:  Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX:   Innocent Misrepresentation/Marketing (paragraph 849)

Count X:    Unfair Trade Practices/Consumer Protection (paragraphs 850-865) (see below)

      Count XI:  Negligence (paragraphs 866-880)

      Count XII – Negligent Undertaking (paragraphs 881-903)

      Count XIII: - State Product Liability Acts (paragraphs 904-911)

      See also the Factual Allegations Section of the *Master Complaint.*

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.    If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)?   N/A based on Causes of Action/Claims  . If so, attach such notice.

## RELIEF

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Date:   January 9, 2025        By: _____

          Kristie M. Hightower (LA Bar #31782)
          Lundy LLP
          501 Broad Street
          Lake Charles, LA 70601
          khightower@lundyllp.com
          T: (337) 439-0707
          F: (337)439-0707

          *Counsel for Plaintiff*

# EXHIBIT A

## FRAUD SUPPLEMENT - COUNTS V & VI

1. Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4. Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5. Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

### Count V: Fraudulent Concealment / Fraud by Omission

7. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Risk of Severe GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b. Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c. Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d. Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e. "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f. "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

   a. Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the product. Defendants' follow-up television commercials continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk."

c. Defendants made representations to the public and to Plaintiff by airing commercials including weight-loss-related content (rather than maintaining a focus strictly on diabetes treatment) which mislead consumers by omission and downplaying risks. The "Do More" campaign featured an overweight firefighter explaining Trulicity comes in an easy-to-use-pen and that "I may even lose a little weight!" While another campaign states "it gets my body to release insulin—like it's supposed to," making Trulicity seem like "the" answer to the diabetic and/or overweight viewer, yet not adequately covering the risks. Defendants' future campaigns are similar in

that they lack sufficient information regarding risk, yet continue to lean on weight loss, indicating that taking Trulicity can help you "lose up to 10 lbs."

   d. Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

12. Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

13. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.